UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY GERBER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. SACV 09-983 PJW<br><br>MEMORANDUM OPINION AND ORDER |

I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). Plaintiff claims that the ALJ erred when she: 1) found that Plaintiff was not credible; and 2) determined that her mental impairment was not severe. (Joint Stip. at 4-16, 22-26.) For the following reasons, the Court concludes that the ALJ erred and that remand is warranted.

II. BACKGROUND

Plaintiff applied for DIB on January 23, 2006, claiming that she was disabled due to, among other things, multiple sclerosis and depression. (Administrative Record ("AR") 106-08, 116.) The Agency

denied the application initially and on reconsideration.  (AR 64-70, 75-79.)  Plaintiff then requested and was granted a hearing before an Administrative Law Judge ("ALJ").  (AR 81-85.)  On April 22, 2008, Plaintiff appeared with counsel at the hearing and testified.  (AR 26-63.)  On November 19, 2008, the ALJ issued a decision denying benefits.  (AR 14-25.)  Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review.  (AR 1-5, 7-11.)  She then commenced this action.

## III. ANALYSIS

### A.   The Credibility Determination

In her first claim of error, Plaintiff contends that the ALJ erred by failing to provide specific, clear, and convincing reasons for rejecting her testimony.  (Joint Stip. at 4-16.)  For the following reasons, the Court agrees.

ALJs are tasked with judging the credibility of witnesses. Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons.  *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques as well as the claimant's daily activities.  *Id.* at 1284.

The essence of Plaintiff's claims is that she is unable to work due to various ailments, including "multiple sclerosis, back injury, depression, macular degeneration [. . .], neck pain, double vision, exhaustion, severe anger, confusion, numbness/tingling, paran[oia], [. . .], severe back pain, vision problems, reading problems,

communication problems, people problems[.]"  (AR 116.)  Plaintiff complained that her conditions limited her ability to work because of:

> Stress, heat, re[petitive] motions, reading, following instructions, interaction with people, taking notes, phone numbers, names, following directions, focus, filing, concentration, learning new tasks [is] extrem[ely] difficult for me, anything demanding causes extreme stress and confusion.  There are many other situations that I am unable to deal with.  Any stress is bad.  No short term memory.  Easily confused . . ..  The fatigue makes me just want to sleep.  I need to rest often.  The depression causes suicidal thoughts.  I don't want to be left alone.  My back hurts almost everyday, any time I try to do something the repeating motion makes arms, hands and legs hurt.  I have frequent headaches.

(AR 116.)

Plaintiff also claimed that the prescription drug Avonex, which she took once a week for her multiple sclerosis, caused flu-like symptoms, such as headaches, chills, drowsiness, and dizziness, lasting 12 to 24 hours.  (AR 33, 122, 156.)  She testified that she could not work because she forgets what she is doing and gets distracted, and that she drops things, such as cups and plates, all the time.  (AR 34-36.)  Plaintiff claimed that she gets double vision when she is tired and that "maybe once a year" she takes a course of cortisone to alleviate double vision.  (AR 51-52.)  She also testified that she experienced numbness or tingling in her hands or arms several times a week, and that her legs gave out, which caused her to use a cane in 1998 and 1999.  (AR 58-59.)  Finally, she claimed that she

gets headaches a couple of times a week, which require her to rest in a dark room and take Ibuprofen. (AR 59-60.)

The ALJ rejected Plaintiff's testimony on the grounds that: 1) Plaintiff's thoughts "did not seem to wander" at the administrative hearing and that "all questions were answered alertly and appropriately"; 2) there was no evidence that Plaintiff was regularly using strong pain medication that would significantly impair her ability to do basic work activities; 3) there was no evidence of any significant side effects from her medication; and 4) Plaintiff was able to perform some light housework, despite her claims that she was able to perform only very limited daily activities. (AR 24.) For the reasons explained below, the Court finds that these reasons do not support the finding that Plaintiff was not credible.

Plaintiff contends that the ALJ is guilty of "sit and squirm" jurisprudence, in that she rested her finding that Plaintiff was not credible on her observation of Plaintiff at the hearing. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). The Court does not agree. Though it is improper for an ALJ to draw conclusions based on a claimant's failure to exhibit alleged symptoms at an administrative hearing, *id.,* an ALJ may rely on what he observes at a hearing that undermines a claimant's alleged symptoms. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Here, despite Plaintiff's claims of mental impairment causing difficulty in, for example, processing information, the ALJ observed that Plaintiff had no difficulty in understanding the questions the ALJ asked and in answering them. The ALJ properly considered this factor in judging Plaintiff's credibility.

1     The ALJ's second reason for questioning Plaintiff's credibility
2 was that there was no credible evidence that Plaintiff regularly used
3 strong pain medication that would significantly impair her ability to
4 do basic work activities.  (AR 24.)  The Court does not find this to
5 be a convincing reason to reject Plaintiff's testimony.  Plaintiff's
6 numerous complaints about her physical ailments ran the gamut from
7 "can't hold things" to "can't concentrate," and touched upon many
8 things in the middle, so to speak, like "unable to handle stress" and
9 "fatigue."  (AR 31-52, 116.)  Though she did complain at times about
10 pain, pain was not the primary reason she claimed that she could not
11 work.  (AR 31-52, 116.)  Thus, the ALJ's conclusion that Plaintiff was
12 not being candid because there was no evidence that she regularly used
13 pain medication that impaired her ability to do work is not relevant
14 to Plaintiff's complaints and does not amount to a convincing reason
15 to reject her testimony.
16     The ALJ's next reason for rejecting Plaintiff's testimony was
17 that there were no significant side effects from her medication.  (AR
18 24.)  Arguably, the record supports the underlying basis for this
19 finding.  Plaintiff took Avonex every week to control her multiple
20 sclerosis and experienced flu-like symptoms for 12 to 24 hours after
21 taking the medication.  (AR 33.)  Presumably, the ALJ concluded that
22 these flu-like symptoms were not a significant side effect.  Accepting
23 this conclusion, the Court still questions how this showed that
24 Plaintiff was not credible.  As to the existence of the flu-like
25 symptoms for 12 to 24 hours, the medical expert corroborated
26 Plaintiff's testimony as to the symptoms and the length of time that
27 they lasted.  (AR 56.)  Thus, Plaintiff was not lying about the side
28 effects.  How the lack of significant side effects from Plaintiff's

medication helped to show that Plaintiff was untruthful is unclear. There is no evidence that Plaintiff should have been taking some other medication, or that she would have experienced less symptoms if she did.  Thus, the Court concludes that this reason offered by the ALJ to discount Plaintiff's testimony is not convincing.

Finally, the ALJ found that Plaintiff was not credible in her claims that she could not work because she was able to perform "some light housework." (AR 24.)  Again, though there is some evidence to support the underlying factual conclusion, the Court is not convinced that this shows that Plaintiff was not telling the truth.  Plaintiff testified, for example, that she walks her dog about three or four times a week, drives occasionally, does a little housework, such as wiping the counters or folding laundry, occasionally cooks, sometimes uses a "Swifter" to sweep the floor, goes to Costco to shop about once a week, and feeds the birds. (AR 36, 42, 43, 44-46.)  This minimal amount of activity does not seem to support the ALJ's finding that Plaintiff's claims that she cannot work were not credible.  In the first place, Plaintiff's testimony documents a very limited amount of activity and does not establish that Plaintiff could sustain a 40-hour-a-week job. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that daily activities can be grounds for adverse credibility finding only if claimant is able to "spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting") (quotation omitted).  Further, the fact that Plaintiff admits to performing these activities and still contends that she cannot work does not go to her honesty, but, rather, her perception as to what she was capable of. Though, objectively, Plaintiff's testimony that she can perform some

1 household tasks might contradict her claim that she cannot work, it
2 does not establish that she is not telling the truth when she claims
3 that she cannot work. Rather, it shows that her subjective assessment
4 of her capabilities is, arguably, faulty. Thus, this does not
5 constitute a convincing reason to reject her testimony, either.
6     The Agency argues that the ALJ also relied on the fact that the
7 objective medical evidence did not support Plaintiff's claims of
8 disabling pain and impairment. (Joint Stip. at 16-17.) It then
9 summarizes that medical evidence and explains why the ALJ was right in
10 relying on this basis. The ALJ's decision, however, does not support
11 the Agency's argument here. Though the ALJ thoroughly reviewed the
12 medical records and set forth a summary of what the doctors found with
13 regard to Plaintiff's ailments, the ALJ never claimed that she was
14 rejecting Plaintiff's testimony because it was inconsistent with the
15 medical record. (AR 20-24.) Instead, she explained that she was
16 discounting the testimony for "the reasons stated above" (AR 24),
17 which reasons the Court has set forth and discussed above. In the
18 next paragraph of her decision, the ALJ summarily concluded, "the
19 claimant's statements concerning the intensity, persistence and
20 limiting effects of these symptoms are not credible to the extent they
21 are inconsistent with the above residual functional capacity
22 assessment." (AR 24.) Assuming that this is what the Agency is
23 referring to when it argues that the ALJ rejected Plaintiff's
24 testimony after "properly consider[ing] the objective medical
25 evidence" (Joint Stip. at 16), the Court concludes that this is not
26 specific enough to support an adverse credibility finding. *See*
27 *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882, 884-85 (9th Cir. 2006)
28 (rejecting ALJ's finding that claimant is incredible based on fact

that testimony was "not consistent with or supported by the overall medical evidence of record" because justification lacks meaningful explanation and gives the court nothing with which to assess the ALJ's determination).

Ultimately, the Court finds that the ALJ cited four reasons for rejecting Plaintiff's credibility and the Court has concluded that three of them are not clear and convincing. The remaining reason--i.e., the fact that Plaintiff did not have trouble responding to the ALJ's questions at the hearing--is probably not enough to sustain the ALJ's credibility finding. More importantly, however, whether it is enough is a matter for the ALJ to decide in the first instance. Only she can determine whether she would have discounted Plaintiff's testimony for this reason alone. As a result, remand is required. On remand, the ALJ will have a chance to reconsider the credibility determination. In doing so, she is not limited in her analysis and may consider any factors she finds relevant in determining credibility.

B.   Plaintiff's Mental Impairment

In her second claim of error, Plaintiff contends that the ALJ erred in determining at step two that she did not suffer from a severe mental impairment. (Joint Stip. at 22-26.) For the following reasons, the Court finds that this issue, too, should be re-evaluated on remand.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The governing regulations

define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Under Social Security Ruling ("SSR") 85-28, a "determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" A claimant's subjective symptoms must be considered in this evaluation. *Smolen*, 80 F.3d at 1290. The step-two inquiry is intended to be a "de minimis screening device." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

The ALJ cited numerous reasons for concluding that Plaintiff's depression did not limit her ability to work. A fair reading of the ALJ's decision, however, points to the fact that this conclusion was based in large measure on the fact that the ALJ found that Plaintiff was not credible. For example, psychiatrist Edward Kaufman, who apparently treated Plaintiff from 2006 to 2008, reported that he had diagnosed her with major depression and generalized anxiety disorder. (AR 698.) The ALJ rejected Dr. Kaufman's opinion, however, because it was clear that it was based, in large measure, on Plaintiff's recitation of her symptoms and treatment, which the ALJ did not accept. (AR 24.) Had the ALJ accepted Plaintiff's claims, she likely would not have rejected Dr. Kaufman's opinion, at least not for this reason. The same holds true for the other reasons cited by the ALJ to conclude that Plaintiff's depression was not a severe impairment. On remand, the ALJ should first re-consider the issue of Plaintiff's

credibility, and then determine whether her claimed psychiatric impairments are severe.[1]

### C. Remand is the Appropriate Remedy

In her prayer for relief, Plaintiff requests that the Court remand the case to the Agency with instructions to order the immediate payment of benefits. This the Court declines to do for the reasons explained below.

The decision whether to reverse for an award of benefits or to remand for further proceedings is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, the Court can remand with instructions to award benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). Where, as here, however, there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that Plaintiff is entitled to benefits, remand for further proceedings is appropriate. *Id.* at 1180-81; *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

---

[1] Dr. Kaufman's 2006 evaluation is not in the record. Nor are any of his treatment notes. (He reports that he treated Plaintiff between November 2006 and March 2008. (AR 698.)) These records should be made part of the record so that the ALJ, and the Court, if necessary, can assess the extent of treatment Plaintiff received for her depression. So, too, should any additional treatment records from Plaintiff's treating physician, who, Plaintiff claims, treated her depression from 1995 to 2006 with Prozac, Paxil, Lexapro, and Zoloft. (AR 698.)

Though the Court has called into question the ALJ's credibility finding, it has not concluded that Plaintiff was credible. That decision is for the ALJ in the first instance. The same holds true for the Court's ruling on the step-two determination. The Court has not concluded that Plaintiff's depression is a severe impairment, it has, instead, questioned the ALJ's conclusion in this regard and sent the issue back for further consideration. The Court notes that there is scant evidence regarding Plaintiff's treatment for depression in this record. What there is is confusing. Plaintiff purports to have been treated for depression from 1995 to 2008, but fails to include treatment records relating to this treatment from her treating doctor or a psychologist or psychiatrist. Even assuming that she had included these records, it appears that the medication that she took for her depression controlled her symptoms to some extent. Where medication is effective in controlling a condition, it is reasonable for the Agency to conclude that the condition is not disabling. *See Montijo v. Sec'y of Health & Human Servs.*, 729 F.2d 599, 600-01 (9th Cir. 1984) (affirming ALJ's finding that Addison's Disease controlled with medications was not disabling); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (upholding ALJ's conclusion that rib condition that could be controlled with antibiotics not disabling).

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is reversed and the case is remanded for further consideration.[2]

IT IS SO ORDERED.

DATED: September 9, 2010.

/s/ Patrick J. Walsh
_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Gerber\Memo_Opinion.wpd

---

[2] The Court notes that the ALJ failed to address the statements made by Plaintiff's husband in the report he submitted in support of her application. (AR 126-33.) This, too, was error. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). The Court has not addressed the merits of this issue because Plaintiff elected not to raise it on appeal. Should the Agency again reject her claims, however, and should she raise the issue on appeal, the Court would be required to address it. The Court makes this observation in the interests of saving time should further review by the Court become necessary.